UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| THE FREE LANCE-STAR PUBLISHING CO. | ) | |
| OF FREDERICKSBURG, VA[1] | ) | Case No. 14-30315-KRH |
| | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| WILLIAM DOUGLAS PROPERTIES, LLC[2] | ) | |
| | ) | |
| Debtor. | ) | Case No.  14-30316-KRH |
| | ) | |

## DEBTORS' MOTION TO AUTHORIZE USE OF CASH COLLATERAL AND ADEQUATE PROTECTION AND MEMORANDUM IN SUPPORT THEREOF

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors" and

each a "Debtor") hereby move the Court for the entry of an order pursuant to 11 U.S.C. §§ 361

and 363, and Rule 4001 of the Federal Rules of Bankruptcy Procedure, authorizing the Debtors'

use of cash collateral and granting of certain adequate protection, and, in support hereof,

respectfully represents as follows:

### Jurisdiction and Venue

1.     On or about January 23, 2014 (the "Petition Date"), the Debtors commenced

reorganization cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy

---

[1] Debtor FLS' address and TIN are as follows: 616 Amelia Street, Fredericksburg, VA 22401; 54-0216580.
[2] Debtor William Douglas' address and TIN are as follows: 801 Hanover Street, Fredericksburg, VA 22401; 20-4012609.

Lynn L. Tavenner, Esquire (Va. Bar No. 30083)
Paula S. Beran, Esquire (Va. Bar No. 34679)
Tavenner & Beran, PLC
20 North Eighth Street, Second Floor
Richmond, Virginia  23219
Telephone:  (804) 783-8300
Telecopy:  (804) 783-0178

*Proposed Counsel for the Debtors*

Code.

2.      The Debtors are continuing in possession of their properties and are operating and

managing their business, as Debtors-in-Possession, pursuant to §§ 1107 and 1108 of the

Bankruptcy Code.

3.      The Court has jurisdiction over these matters pursuant to 28 U.S.C. §§ 157 and

1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

### The Debtors' Business and Background

4.      The Free Lance-Star Publishing Co. of Fredericksburg, Va. ("FLS" or "the

Company") is a family-owned publishing, newspaper, radio and communications company

located primarily in Fredericksburg, Virginia.  William Douglas Properties, L.L.C. ("William

Douglas") is a related entity that owns a portion of the land pursuant to which FLS operates

certain aspects of its business.

5.      For nearly 130 years, FLS has developed a reputation for integrity, credibility and

innovation in the Fredericksburg region and the media industry.  The Free Lance was first

published in 1885 when a group of local Fredericksburg merchants and businessmen created the

paper to serve the news and advertising needs of the community. In 1900, the company merged

with The Daily Star and published two papers independently until 1926 when, under the

leadership of Josiah P. Rowe Jr., they were combined into a single, six day a week newspaper:

The Free Lance-Star. Rowe eventually became the owner and publisher of the newspaper.

6.      The sons of Josiah P. Rowe, Jr., Charles S. Rowe and Josiah P. Rowe III, assumed

the duties of co-publishers after their father's death in 1949. In 1997, upon Charles' retirement,

the family of Josiah P. Rowe III purchased total ownership of the business. Florence C. Barnick

and Nicholas J. Cadwallender, Associate Publishers (and Rowe family members), served as the

Company's leadership with Josiah P. Rowe III as President and Publisher.  In 1998, The Free

<u>Lance-Star</u> responded to changing lifestyles and regional growth by adding a Sunday edition and moving from afternoon to morning publication.

7.      The Company diversified by expanding into radio broadcasting.  WFLS-AM, the Company's first radio station, began on-air operation in 1960, WFLS-FM in 1961, and today WFLS-FM's country format is the region's radio powerhouse. The AM signal now broadcasts WNTX News, Talk, Sports. In 1994, WYSK (now WVBX) became the Company's second FM station. Situated in Spotsylvania County, its contemporary hits format is popular among younger listeners. To round out radio offerings, the Company purchased WWUZ Classic Rock, licensed to Bowling Green, in 2001.  All four stations continue on the air today.

8.      As the Company has grown to meet business and audience demand, its mission remained: to improve and connect the lives of the people in the communities it serves.   Indeed, as the internet emerged in the mid-1990's, the Company developed a web presence under the name *FLStarWeb.com*. In 1999, the web address was changed to www.fredericksburg.com, and it has become the premier news, advertising and community portal for the region.

9.      In 2006, the Company developed plans to diversify the portfolio of offered services by significant expansion of the commercial printing business.  Branch Banking and Trust ("BB&T") pursued the Company to be chosen as the lender and, in 2007, the Company borrowed $50.8 million from BB&T.  The Company designed and built a state-of-the-art printing facility that began operation in 2009. The building of the plant coincided with the worst recession since the Great Depression.  Newspaper and radio advertising declined precipitously as businesses reduced their marketing budgets. Additionally, newspaper circulation revenue declined as many readers migrated to the internet for their news.

10.     As early as 2009, with Print Innovators still under construction, it became apparent the Company would not be in compliance with certain covenants of its loan agreement

with BB&T and gave notice to BB&T of that fact.  In December of 2011, the Company signed a

forbearance agreement with BB&T.  In 2011 Josiah P. Rowe III retired after 60 years as

publisher, and Nicholas J. Cadwallender became President and Publisher, with Florence C.

Barnick serving as Associate Publisher. The Company continued to make timely payments to

BB&T even though revenue continued to decline.  Efforts to restructure the business to become

compliant with the loan covenants could not fully offset the continued revenue losses. These

efforts included reducing employee head count by one third from 454 full and part-time

employees in 2007 to 303 full and part-time employees at the end of 2013.

11.     At BB&T's request, the Company, with the assistance of professional advisors,

attempted to refinance the BB&T obligations.  When this was not successful, the Company, also

with the assistance of professional advisors, pursued a sale as a going concern.  However, the

Company and its advisors were not able to find a buyer at a price acceptable to BB&T.  In late

June of 2013 BB&T, with permission of the Company, sold its loan to DSP Acquisitions, LLC, a

company operated by Sandton Capital Partners (collectively, "Sandton").

12.     Sandton  informed the Company that it wanted the Company to file a Chapter 11

bankruptcy case and sell substantially all of its assets pursuant to 11 U.S.C. § 363.  Sandton also

indicated that it desired to be the entity that obtained the Company's assets and, if it did obtain

possession of the Company's assets, it would continue the Company's businesses.

13.     With no better option available, the Company agreed to work with Sandton in

connection with a Chapter 11 filing in an effort to maximize the value of its assets and in the

hopes of providing a mechanism for the continuation of the Company's businesses and mission,

which have developed over the past 129 years.

14.     Unfortunately, there remain material disagreements on the implication of certain

facts.  Consequently, the parties have been unable to agree on (i) Sandton's adequate protection

and (ii) the appropriate impact of those facts in relation to a sale transaction.

**Cash Collateral**

15.     The Debtors and BB&T (and/or "Predecessor Lender"), are parties to the certain Secured Credit Agreement dated as of September 11, 2007, as amended by that certain Loan Modification and Forbearance Agreement dated as of December 14, 2011, and by that certain Limited Waiver Agreement dated as of May 23, 2012 (and, as may be further amended, restated, or modified from time to time, collectively, the "Credit Agreement").

16.     Pursuant to that Credit Agreement, Predecessor Lender agreed to make available to the Debtors (i) loans in the aggregate principal amount not to exceed $45,842,400.00 (collectively, the "Loan"), and (ii) a revolving line of credit loan in the principal amount not to exceed $5,000,000.00 (the "Revolving Loan").

17.     The Loan is evidenced by that certain Draw Commercial Note dated September 11, 2007, made by the Debtors payable to the order of BB&T in the original principal amount of $45,842,400.00 (as amended, restated, modified or supplemented from time to time, the "Note").

18.     The Revolving Loan has been repaid in full and all availability under the Revolving Loan has been terminated.

19.     The Loan and the Debtors' obligations under the Credit Agreement, the Note and the other related documents (the "Loan Documents") are secured by (i) that certain Credit Line Deed of Trust executed by Debtor William Douglas for the benefit of BB&T dated as of September 11, 2007 and recorded on September 11, 2007 as instrument number 070003212 in the Clerk's Office of Fredericksburg City, Virginia; (ii) that certain Additional Security Credit Line Deed of Trust executed by the Debtors for the benefit of BB&T dated as of September 11, 2007 and recorded on September 11, 2007 as instrument number 070003213 in the Clerk's Office of Fredericksburg City, Virginia; (the foregoing deeds of trust, as amended, restated,

modified or supplemented from time to time, being collectively referred to herein each as a

"Deed of Trust" and collectively as the "Deeds of Trust"); (iii) that certain Assignment of Rents

and Leases executed by Debtor William Douglas for the benefit of BB&T dated as of September

11, 2007 and recorded on September 11, 2007 as instrument number 070003214 in the Clerk's

Office of Fredericksburg City, Virginia; (iv) that certain Assignment of Rents and Leases

executed by the Debtor for the benefit of BB&T dated as of September 10, 2007 and recorded on

September 11, 2007 as instrument number 070003215 in the Clerk's Office of Fredericksburg

City, Virginia (the foregoing assignments of rents and leases, as amended, restated, modified or

supplemented from time to time, being collectively referred to herein each as an "Assignment of

Rents" and collectively as the "Assignments of Rents"); (v) that certain Security Agreement

between the Debtor and BB&T dated as of September 11, 2007 (as amended, restated, modified

or supplemented from time to time, the "Security Agreement"); and (vi) all of the other

Collateral Documents (as defined in the Credit Agreement)

      20.     One June 25, 2013, DSP Acquisition, LLC, a Delaware limited liability company

(an affiliate of Sandton) (the "Lender" and/or "DSP")  purchased from the Predecessor Lender,

and the Predecessor Lender sold to the Lender (the "Purchase Transaction"), all of the

Predecessor Lender's, right, title, and interest in and to, among other things, the Loan, the Note,

the Collateral Documents, the other Loan Documents, and all other assets, security interests, or

rights with respect to the Credit Agreement, the Loan and the Note.  The amount outstanding as

of the Petition Date is approximately $37,890,000.00.

      21.     Pursuant to the terms of the Collateral Documents, the Lender has a perfected

security interest in certain of the Debtors' Cash Collateral (as hereafter defined).  To the best of

the Debtors' information and belief, Lender is the only creditor of the Debtors with a lien upon

the Cash Collateral.

22.     The Debtors also own certain real property and improvements thereon in the form

of transmission towers (collectively "the Tower Assets").  The Tower Assets also generate

approximately $13,100 per month in the form of rents.  To the best of the Debtors' knowledge,

no entity has a perfected security interest in the Tower Assets or the rents generated therefrom

and certain other estate property (the "Unencumbered Assets").

23.     The Debtors and the Lender were negotiating an asset purchase agreement related

to a sale of substantially all of the Debtors' assets to the Lender.  However, there remain material

disagreements on the implication of certain facts.  Consequently, the parties have been unable to

agree on (i) Sandton's adequate protection and (ii) the appropriate impact of those facts in

relation to a sale transaction.

## Relief Requested

24.     In order to remain in possession of property and continue business activity in an

effort to maximize the value of assets for the benefit of the estates, the Debtors must use their

cash collateral (as said term is defined in § 363 of the Bankruptcy Code) (hereafter, the "Cash

Collateral") in their ordinary business operations.

25.     The Debtors seek entry of an order pursuant to §§ 361 and 363 of the Bankruptcy

Code authorizing, on an interim basis, the:  (i) use of Cash Collateral; (ii) granting of certain

adequate protection, if necessary, to Lender in connection with such use; and (iii) granting of

such other and further relief as the Court may deem proper.

26.     Specifically, the Debtors seek authority to use Cash Collateral to fund the

operation of their business for the next months in amounts substantially similar to the budget

attached hereto as Exhibit A.

27.     The Debtors require the use of such Cash Collateral to effectively administer the

Chapter 11 estates; specifically, the Debtors require the continued use of such cash or cash

equivalents to permit it to pay vendors, meet ongoing operational expenses, maintain in effect

insurance policies, preserve and protect their assets, and to generally and otherwise pay

obligations critical to continuing the operation of their business.

28.     In an effort (to the extent necessary) to adequately protect the interests of Lender

in the Cash Collateral, to the extent that Lender has a lien in the Cash Collateral, the Debtors will

provide Lender a replacement lien in the Debtors' post-petition assets, to the same extent of its

pre-petition liens.  Specifically, the Debtors propose to grant to Lender, to the extent of the use of

the Cash Collateral, a post-petition replacement lien, which replacement lien will be of the same

validity, priority and enforceability as the pre-petition lien of Lender in such type of assets.  To

the extent Lender has a valid pre-petition lien on any type of asset and the Debtors use such

collateral post-petition, Lender shall also secure a replacement lien in said type of post-petition

asset.  Lender shall also receive, as additional adequate protection, a payment of the first day of

each month in the amount of $70,000.00.

29.     If the Debtors are not authorized to use Cash Collateral, the Debtors will be

unable to maintain their current business operations.  Without the immediate use of the Cash

Collateral, the Debtors will be seriously and irreparably harmed, resulting in significant losses to

the Debtors' estates and creditors.

30.     The Debtors are without sufficient funds to operate without the use of Cash

Collateral or until a final hearing on this Motion can be held.  To avoid immediate and

irreparable harm, the Debtors require the immediate use of Cash Collateral for the payment of

certain business expenses necessary for the Debtors to continue to operate their businesses.  The

Debtors also are aware and anticipates that many of its vendors will require the payment of cash

in advance of any delivery of goods or services.  Failure to pay for such items on a timely basis

will require the Debtors to close down all operations entirely, which may result in irreparable injury to the Debtors and eliminate their ability to effectively reorganize.

## **Legal Authority**

31.    The Court may approve the Debtors' use of the cash generated from rents and other collateral collected in the ordinary course of the Debtors' business over a lien holder's objection if said lien holder is adequately protected.  Id; see also 11 U.S.C. § 363 (a) and (c)(2). As § 363 of the Bankruptcy Code provides:

> The trustee may not use, sell or lease cash collateral under paragraph (1) of this subsection unless –
>
> > (A)    each entity that has an interest in such cash collateral consents; or
> >
> > (B)    the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions in this section.

11 U.S.C. § 363(b)(2).

32.    Section 361 of the Bankruptcy Code provides:

> When adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by –
>
> (1) requiring the trustee to make a cash payment or periodic cash payments … to the extent that … [such use] results in a decrease in the value of such entity's interest in such property;
>
> (2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease or grant results in a decrease in the value of such entity's interest in such property; or
>
> (3) granting such other relief … as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property

11 U.S.C. § 361.

33.    The lien holder at issue in this Motion, specifically Lender, is adequately protected as provided herein.

## Notice

34.     No trustee, examiner or creditors' committee has been appointed in these

Chapter 11 cases.

35.     Notice of this Motion has been given to:  (a) the Office of the United States

Trustee; (b) the Debtors' 20 largest unsecured creditors, as identified in their Chapter 11

petitions; (c) the Debtors' known secured creditors; and (d) all parties requesting and receiving

EFC notifications in these cases.  In light of the nature of the relief requested herein, the Debtors

submit that no other or further notice is required.

WHEREFORE, the Debtors respectfully request that the Court enter an interim order

substantially in the form attached hereto as Exhibit B and thereafter a final order: (i) authorizing

the use of Cash Collateral; (ii) granting of certain adequate protection for said use; and (iii)

granting such other and further relief as the Court may deem proper.

THE FREE LANCE-STAR PUBLISHING CO.
OF FREDERICKSBURG, VA and
WILLIAM DOUGLAS PROPERTIES, L.L.C.


By:____*/s/ Lynn L. Tavenner*_____
        Proposed Counsel

Lynn L. Tavenner (Va. Bar No. 30083)
Paula S. Beran (Va. Bar No. 34679)
Tavenner & Beran, PLC
20 North Eighth Street, Second Floor
Richmond, Virginia  23219
Telephone:  (804) 783-8300
Telecopy:  (804) 783-0178

*Proposed Counsel for the Debtors*

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of January, 2014, a true and correct copy of the Debtors' Motion To Authorize Use Of Cash Collateral And Adequate Protection And Memorandum In Support Thereof was served via electronic delivery and/or first-class mail to the Office of the United States Trustee, the Debtors' 20 largest unsecured creditors as identified in their Chapter 11 petitions, the Debtors' known secured creditors, and all parties requesting service of pleadings in these cases who receive ECF notifications from the Court (all as listed on Schedule A attached hereto).

*/s/ Lynn L. Tavenner*
Lynn L. Tavenner, Esquire (Va. Bar No. 30083)
Paula S. Beran, Esquire (Va. Bar No. 34679)
Tavenner & Beran, PLC
20 North Eighth Street, Second Floor
Richmond, Virginia  23219
Telephone:  (804) 783-8300
Telecopy:  (804) 783-0178

Exhibit A

The Free Lance-Star Publishing Co., et al
Thirteen Week Cash Flow Projections for the Period Ending [1]
April 25, 2014

($000s)

| | 1/23 - 1/24/14 | 1 1/31/14 | 2 2/7/14 | 3 2/14/14 | 4 2/21/14 | 5 2/28/14 | 6 3/7/14 | 7 3/14/14 | 8 3/21/14 | 9 3/28/14 | 10 4/4/14 | 11 4/11/14 | 12 4/18/14 | 13 4/25/14 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | Week Ending Friday, | | | | | | | | | |
| **I.  Cash Receipts** | | | | | | | | | | | | | | | |
| Newspaper Revenue | $ 227 | $ 479 | $ 527 | $ 515 | $ 405 | $ 602 | $ 515 | $ 447 | $ 561 | $ 432 | $ 545 | $ 520 | $ 463 | $ 512 | $ 6,749 |
| Radio Advertising | 9 | 98 | 83 | 44 | 95 | 172 | 74 | 29 | 118 | 103 | 36 | 23 | 136 | 44 | 1,064 |
| Radio Tower Leases | - | - | 9 | - | - | - | 9 | - | - | - | - | 9 | - | - | 27 |
| Rental Income (WDP) | - | 25 | - | 3 | 25 | - | - | 3 | - | 25 | - | - | 3 | 3 | 86 |
| | 235 | 602 | 619 | 562 | 524 | 775 | 597 | 479 | 679 | 560 | 581 | 552 | 602 | 559 | 7,926 |
| **II.  Cash Disbursements from Operations** | | | | | | | | | | | | | | | |
| Payroll and Taxes | - | - | (475) | - | (490) | - | (475) | - | (510) | - | (475) | - | (500) | - | (2,925) |
| 401K Withholdings | - | - | - | (81) | - | - | - | (59) | - | - | - | (62) | - | - | (202) |
| Carriers - ACH Portion | - | (65) | - | (65) | - | (65) | - | (65) | - | (65) | - | (65) | - | (65) | (455) |
| Commercial Insurance | - | (26) | - | - | - | (26) | - | - | - | (26) | - | - | - | - | (78) |
| Associated Press | (3) | (3) | (3) | (3) | (4) | (3) | (3) | (3) | (4) | (3) | (3) | (3) | (3) | (3) | (46) |
| Sales Tax | (3) | - | - | - | - | (3) | - | - | - | (3) | - | - | - | - | (9) |
| Rent | - | (25) | - | - | (25) | - | - | - | - | (25) | - | - | - | - | (74) |
| Property Taxes | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Other Accounts Payable | - | (190) | (88) | (163) | (251) | (284) | (238) | (283) | (231) | (273) | (242) | (278) | (285) | (206) | (3,013) |
| | (6) | (309) | (566) | (312) | (770) | (381) | (716) | (411) | (746) | (369) | (746) | (408) | (788) | (274) | (6,802) |
| **III.  Net Cash Flow from Operations** | 229 | 293 | 52 | 250 | (246) | 394 | (119) | 69 | (66) | 191 | (165) | 143 | (186) | 284 | 1,124 |
| **IV.  Restructuring/Other - Receipts & (Disbursements)** | | | | | | | | | | | | | | | |
| Property Sale | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Self-Funded Health Claims | - | (26) | (26) | (26) | (26) | (26) | (26) | (26) | (26) | (26) | (26) | (26) | (26) | (26) | (338) |
| Health Care Reimb. Claims | - | (17) | (17) | (17) | (17) | (17) | (8) | (2) | (2) | (2) | (2) | (2) | (2) | (2) | (107) |
| Health Claims Refund | - | - | - | - | - | 50 | - | - | - | - | - | - | - | - | 50 |
| Utility Deposits | - | - | (30) | - | - | - | - | - | - | - | - | - | - | - | (30) |
| Professional Fees | - | - | - | - | - | - | (68) | - | - | - | (166) | - | - | - | (234) |
| US Trustee Fees | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Pension | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Lender Payments | - | (70) | - | - | - | (70) | - | - | - | - | (70) | - | - | - | (210) |
| | - | (113) | (73) | (43) | (43) | (63) | (102) | (28) | (28) | (28) | (264) | (28) | (28) | (28) | (869) |
| **V.  Net Change in Cashflow** | 229 | 180 | (21) | 207 | (289) | 331 | (221) | 41 | (94) | 163 | (429) | 115 | (214) | 256 | 255 |
| **VI.  Cash Balance (Book)** | | | | | | | | | | | | | | | |
| Beginning Cash Balance | $ 511 | $ 740 | $ 920 | $ 899 | $ 1,107 | $ 818 | $ 1,148 | $ 927 | $ 968 | $ 874 | $ 1,037 | $ 608 | $ 723 | $ 510 | $ 511 |
| Net Change in Cashflow | 229 | 180 | (21) | 207 | (289) | 331 | (221) | 41 | (94) | 163 | (429) | 115 | (214) | 256 | 255 |
| Ending Cash Balance | $ 740 | $ 920 | $ 899 | $ 1,107 | $ 818 | $ 1,148 | $ 927 | $ 968 | $ 874 | $ 1,037 | $ 608 | $ 723 | $ 510 | $ 766 | $ 766 |

[1] Includes two-day stub period (1/23-1/24) prior to the 13-week projection period to capture the partial week immediately after filing.

**EXHIBIT B**

## UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF VIRGINIA
#### Richmond Division

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| THE FREE LANCE-STAR PUBLISHING CO. | ) | |
| OF FREDERICKSBURG, VA[1] | ) | Case No. 14-30315-KRH |
| | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| WILLIAM DOUGLAS PROPERTIES, LLC[2] | ) | |
| | ) | |
| Debtor. | ) | Case No.  14-30316-KRH |
| | ) | |

## INTERIM ORDER AUTHORIZING USE OF CASH
## COLLATERAL AND ADEQUATE PROTECTION

This matter came before the Court upon the Debtors' Motion To Authorize Use of Cash

Collateral and Adequate Protection and Memorandum in Support Thereof (the "Motion")[3]. The

Court having reviewed the Motion and having heard the statements of counsel in support of the

relief requested in the Motion at a hearing before the Court (the "Hearing"); the Court finding

that (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (b) this

is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2) and (c) notice of this Motion and the

Hearing was sufficient under the circumstances; and the Court being fully advised in the

premises and having determined that the legal and factual bases set forth in the Motion and at the

---

[1] Debtor FLS' address and TIN are as follows: 616 Amelia Street, Fredericksburg, VA 22401; 54-0216580.
[2] Debtor William Douglas' address and TIN are as follows: 801 Hanover Street, Fredericksburg, VA 22401; 20-4012609.

Lynn L. Tavenner, Esquire (Va. Bar No. 30083)
Paula S. Beran, Esquire (Va. Bar No. 34679)
Tavenner & Beran, PLC
20 North Eighth Street, Second Floor
Richmond, Virginia  23219
Telephone:  (804) 783-8300
Telecopy:  (804) 783-0178

*Proposed Counsel for the Debtors*

Hearing establish just cause for the relief granted herein in order to avoid immediate and irreparable harm to the estates; it is hereby

FOUND, DETERMINED, ORDERED AND ADJUDGED, BASED UPON THE RECORD BEFORE THE COURT AT THE HEARING, that:

1.    *Petition Date*.  On January 23, 2014 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, and each has continued with the management and operation of its businesses and properties as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

2.    *Jurisdiction*.  This Court has core jurisdiction over the Debtors' cases, the Motion, and the parties and property affected hereby, pursuant to 28 U.S.C. §§ 157(b) and 1334.

3.    *Objections*.  All pending objections to the entry of this Interim Order, if any, are resolved hereby or, to the extent not resolved, are overruled.

4.    *Stipulations*.  Subject to paragraph __ of this Order, the Debtors admit, stipulate and agree that:

(a)    Loan Documents.  The Debtors, as borrowers, are parties to the Security Agreement and the other Loan Documents.

(b)    Obligations.  As of the Petition Date, the Debtors were truly and justly indebted and liable to DSP in the approximate aggregate amount of $37,890,000.00 (together with any other amounts outstanding under the Loan Documents, the "Prepetition Debt").  The Prepetition Debt and the Loan Documents constitute the legal, valid and binding obligations of the Debtors, enforceable in accordance with their terms (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code).

---

[3] Capitalized terms not otherwise defined herein shall have the meanings given to them in the Motion.

(c)     Security Interest.  Under the Loan Documents, each of the Debtors granted to DSP continuing, first-priority security interests in and liens upon certain of the Debtors' assets as more particularly described on Exhibit _____ attached hereto [attach the language from the security agreement – the actual page from the security agreement] and certain real property as described on Exhibit __ attached hereto [attach property descriptions from the recorded deeds of trusts].  Certain of said liens were perfected pursuant to the recordation of deeds of trust against the real property described on Exhibit __ [same Exhibit as immediately preceding], recordation of assignments of rents and leases against the real property described on Exhibit __ [same Exhibit as immediately preceding], and the UCC-1 financing statements attached hereto as Exhibit ___.  The assets subject to the before mentioned perfection of liens shall hereafter be referred to as the "Collateral."

(d)     Certain cash proceeds of the Collateral, are encumbered by DSP's prepetition security interests and, as such, constitutes "cash collateral" of DSP (as such term is defined in section 363(a) of the Bankruptcy Code, the "Cash Collateral").

5.     *Use of the Cash Collateral – Cash Management*.  The Debtors allege that, in the ordinary course of business, the Debtors require cash on hand and cash flow from their operations to fund their working capital needs and therefore there is a risk that the going concern value of the Debtors' businesses will decline if they cannot access cash on hand and cash flow from their operations.  Subject to the terms and conditions set forth herein, the Debtors are hereby authorized to use the Cash Collateral to pay amounts approved by any other Order of this Court and to provide working capital for the Debtors, but in any event solely in accordance with the Budget and in accordance with applicable orders of this Court.

6.      *Terms of Cash Collateral Use*.  The terms of the Debtors' use of the Cash

Collateral and the adequate protection arrangements, in each case as more fully set forth in this

Interim Order, (i) are fair and reasonable, (ii) reflect the prudent exercise of business judgment

consistent with the Debtors' fiduciary duties, (iii) constitute reasonably equivalent value and fair

consideration and (iv) are essential and appropriate for the continued operation and management

of the Debtors' businesses and the preservation of their assets and properties.  Entry of this

Interim Order is in the best interests of the Debtors and their estates and creditors and will,

among other things, allow for the continued operation of the Debtors' existing businesses.

7.      *The Budget*.

(a)      The amount of the Cash Collateral authorized to be used hereby by the

Debtors shall not exceed the amounts reflected in the budget attached to this Interim Order as

Exhibit A (as amended, supplemented, extended or otherwise modified from time to time, the

"Budget") for the time period set forth herein except as provided below:

(i)      Debtors shall be authorized to use Cash Collateral in accordance

with the Budget, in an amount that would not cause the Debtors to use Cash Collateral for

operating disbursements in an aggregate amount greater than one-hundred and ten percent

(110%) of the operating disbursements in the Budget for any 4-week period (a "Permitted

Variance"). If the aggregate amount of Cash Collateral actually used by the Debtors, measured

on a 4-week basis, is less than the aggregate amount of Cash Collateral available for use by the

Debtors in the Budget during such period, then for purposes of the Permitted Variance, the

Debtors may carry over any such unused amount to the future periods in the Budget

(b)      The Debtors represent, based on the best of their knowledge, due diligence

and a review of documents and information, that (i) the Budget is achievable and will likely

4

allow the Debtors to operate in the ordinary course of business and without the accrual of unpaid

administrative expenses; and (ii) the Budget includes all reasonable, necessary, and presently

foreseeable expenses that are required to be incurred and paid in connection with the operation of

the Debtors' businesses for the period set forth in the Budget.

(c)     The Budget may be amended, supplemented, extended or otherwise

modified from time to time in form and substance to which the Debtors and DSP agree, only

upon the written consent of the Debtors and DSP, and any such amendment, supplement,

extension or modification shall be effective without further approval by the Court or notice to

any party, other than notice to the United States Trustee and any official committee(s).

8.     *Adequate Protection*.   DSP is entitled, pursuant to sections 361, 363(c)(2) and

363(e) of the Bankruptcy Code, effective as of the Petition Date, to adequate protection of its

interests in the Collateral and the Cash Collateral ("Adequate Protection"), in an amount equal to

the aggregate diminution in value of DSP's Collateral, including, without limitation, any such

diminution resulting from the sale, lease or use by the Debtors (or other decline in value) of the

Collateral and from the imposition of the automatic stay pursuant to section 362 of the

Bankruptcy Code (such diminution in value, the "Adequate Protection Obligations").  Any claim

or lien granted by this Interim Order with respect to adequate protection shall not be:  (a) subject

or junior to any lien that is avoided and preserved for the benefit of the Debtors' estates, whether

under section 551 of the Bankruptcy Code or otherwise; or (b) subordinated to or made pari

passu with any other claim or lien, whether under section 364(d) of the Bankruptcy Code or

otherwise.  As Adequate Protection, DSP is hereby granted the following:

(a)     Adequate Protection Liens.  DSP is hereby granted (effective and

perfected upon the Petition Date and without the necessity of the execution by the Debtors of

mortgages, deeds of trust, security agreements, pledge agreements, control agreements, financing

statements or other agreements), to the extent of the diminution in value of the Collateral from

the Debtors' use of Cash Collateral, additional and valid, perfected and enforceable continuing

replacement security interests and liens (the "Adequate Protection Liens")  in the collateral type

similar to the Collateral to the extent that DSP held a valid and perfected lien prior to the Petition

Date (such collateral, the "Replacement Collateral"); and

      (b)      Adequate Protection Payments.  DSP shall receive, as additional adequate

protection, a payment of the first day of each month in the amount of $70,000.00.

      9.      *Perfection of Adequate Protection Liens.*

      (a)      Subject to the provisions of this Interim Order, DSP is hereby authorized,

but not required, to file or record financing statements, trademark filings, copyright filings,

mortgages, notices of lien or similar instruments in any jurisdiction or take any other action in

order to validate and perfect the liens and security interests granted to DSP hereunder.  Whether

or not DSP shall, in its sole discretion, choose to file such financing statements, trademark

filings, copyright filings, mortgages, notices of lien or similar instruments or otherwise confirm

perfection of the liens and security interests granted to them hereunder, such liens and security

interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to

challenge dispute or subordination, at the time and on the date of entry of this Interim Order.

      (b)      The Debtors are authorized and directed to execute such agreements,

security agreements, pledge agreements, control agreements and documents, including without

limitation, mortgages, pledges, Uniform Commercial Code financing statements, mortgages,

instruments or other documents as may be reasonably required by DSP to provide further

evidence of the perfection of DSP's security interests and mortgages in the Replacement Collateral as provided herein.

10.     *Authorization to Act*.  Each of the Debtors is expressly authorized, empowered and directed to perform, and the automatic stay of section 362 of the Bankruptcy Code is hereby modified to permit them to make, execute and deliver all instruments and documents (including the execution of security agreements, mortgages and financing statements), take such other actions and to pay all fees and expenses, which may be reasonably required or necessary for the Debtors' performance under this Interim Order, including, inter alia, to:  (i) perform all of their obligations as provided for in this Interim Order; (ii) pay the fees and expenses set forth in this Interim Order, and (iii) to perform all other acts that may be required in connection with this Interim Order.  The Debtors are authorized and directed to perform all acts and to make, execute and deliver any and all instruments as may be necessary to implement the terms and condition of this Interim Order and the transactions contemplated hereby.  The stay of section 362 of the Bankruptcy Code is hereby modified to permit the Debtors and DSP to accomplish the transactions contemplated by this Interim Order without further order of the Court.

11.     *Amendments*.  If necessary to implement the terms and condition of this Interim Order, each of the Debtors are expressly authorized and empowered to enter into amendments or other modifications of the Loan Documents without further order of the Court, in each case, in such form as DSP may agree (in its sole discretion) with the Debtors in writing.

12.     *Reservation of Rights*. (a) Under the circumstances and given that the above described Adequate Protection is consistent with the Bankruptcy Code, including section 506(b) thereof, the Court finds that the Adequate Protection is reasonable and sufficient to protect the interests of DSP for the limited duration of this Interim Order.  However, notwithstanding

anything herein to the contrary, at any time DSP may request further or different adequate protection or other relief from the Court with respect to the these cases or this Interim Order after notice and a hearing, which may be conducted on an expedited basis, and the Debtors or any other party in interest may contest any such request.  Except as expressly provided herein, nothing contained in this Interim Order (including, without limitation, the authorization of the use of any Cash Collateral) shall impair or modify any rights, claims or defenses available in law or equity to DSP or the Debtors. (b) Nothing contained in this Interim Order shall impair or modify any rights or claims of the Debtors related to assets not subject to a properly perfected security interest.

13.     *Immediate Entry of this Order*.  The Debtors have requested immediate entry of this Interim Order pursuant to, and have complied with, Bankruptcy Rule 4001(b)(2). For the reasons stated herein and as stated on the record at the Hearing, this Court concludes that immediate entry of this Interim Order is in the best interests of the Debtors.

14.     *Effectiveness*.  This Interim Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon execution hereof.

15.     *Final Hearing*.   The final hearing (the "Final Hearing") is scheduled for _____, 2014 at _____:_____ a.m./p.m. before this Court.  The Debtors shall promptly mail copies of this Interim Order (which shall constitute adequate notice of the Final Hearing, including without limitation, notice that the Debtors will seek approval at the Final Hearing of a waiver of rights under section 506(c) of the Bankruptcy Code) to the parties having been given notice of the Interim Hearing, upon the Office of the United States Trustee, the Debtors' unsecured creditors as identified in their chapter 11 petitions, DSP and its counsel, and any party who has filed a notice of appearance in these cases.

8

16.    Any party having any objection to any of the relief provided herein shall, prior to

_____, 2014: (a) file a written objection with the Clerk of this Court; (b)

serve copies of such written objection on (i) Tavenner & Beran, PLC, (ii) the Office of the

United States Trustee, (iii) the Debtors' unsecured creditors as identified in their chapter 11

petitions, and (iv) DSP and its counsel (Lowenstein Sandler LLP, 65 Livingston Avenue,

Roseland, NJ 07068; Attn. S. Jason Teele, Esq.); and (c) attend the Final Hearing.

Enter:                                      _____
                                            UNITED STATES BANKRUPTCY JUDGE

I ask for this:


_____
Lynn L. Tavenner, Esquire (Va. Bar No. 30083)
Paula S. Beran, Esquire (Va. Bar No. 34679)
Tavenner & Beran, PLC
20 North Eighth Street, Second Floor
Richmond, Virginia 23219
Telephone:  (804) 783-8300
Telecopy:  (804) 783-0178

     *Proposed Counsel to the Debtors*


Seen and not objected to:


*/s/*_____
Robert B. Van Arsdale, Esquire
Office of the United States Trustee
701 East Broad Street, Suite 4304
Richmond, Virginia 23219
Telephone:  (804) 771-2310

     *Assistant United States Trustee*


**CERTIFICATION**

I hereby certify that the foregoing proposed Order has been either served on, January __, 2014 by first-class mail, postage prepaid, and/or electronic delivery or endorsed by all necessary parties.

_____
Lynn L. Tavenner, Esquire (Va. Bar No. 30083)
Paula S. Beran, Esquire (Va. Bar No. 34679)
Tavenner & Beran, PLC
20 North Eighth Street, Second Floor
Richmond, Virginia  23219
Telephone:  (804) 783-8300
Telecopy:  (804) 783-0178

Lynn L. Tavenner, Esq
Tavenner & Beran, PLC
20 N. 8th Street, Second Floor
Richmond, VA  23219

Robert A. Canfield, Esquire
Canfield, Baer, & Heller, LLP
2201 Libbie Ave., Suite 200
Richmond, VA 23230

S. Jason Teele, Esq
Lowenstein Sandler LLP
65 Livingston Avenue
Roseland, New Jersey 07068

William A. Gray, Esquire
Sands Anderson PC
1111 East Main Street Suite 2400
Richmond,  Virginia 23218-1998

International Forest Products LLC
Attn: Delores O'Kane
PO Box 711930
Cincinnati, OH 45271-1930

Pension Benefit Guaranty Corporation
1200 K Street, N.W.
Suite 270
Washington, DC 20005-4026

City of Fredericksburg
Attn: G.M. Jim Haney, Treasurer
Box 644
Fredericksburg, VA 2204-0267

Dominion VA Power
PO Box 26666
Richmond, VA 23216

White Birch Paper Company
Attn: Jill Morea
Box 513056
Philadelphia, PA 19175-3056

Eastman Kodak
Laura Heinzinger
343 State Street
Rochester, NY 14650

Flint Group North America Corp.
Attn: Laura McCray
1455 Paysphere Circle
Chicago, IL 60674

Midland Paper Company
Attn: Tonya Lynn
101 E. Palatine Road
Wheeling, IL 60090

Professional Building Maintenance, INC.
Attn: Justin Thacker
11 Ridgemore Circle
Fredericksburg, VA 22405

Arrow Marketing Group INC.
Attn: John Vefalco, District Manager
202 New Edition Court
Cary, NC 27511

Columbia Gas
Box 742529
Cincinnati, OH 45274-2529

Arbitron Company
Attn: Ellen Promisloff
9705 Patuxent Woods Drive
Columbia, MD 21046-1572

Resolute FP US INC.
Attn: David J. Patterson, President
5300 Cureton Ferry Road
Catawba, SC 29704

Washington Post
Attn: Bryant Desqeaux
1150 15th St. SW
Washington DC. 20071

SunTrust
PO Box 85024
Richmond, VA 23285

Rappaport Companies
Attn: Megan Murphy
8405 Greensboro Dr.
Eighth Floor
McLean, VA 22102

Utility Management Services
Attn: Lindsay Brent
PO Box 890134
Charlotte, NC 28289

Richmond Window Corp.
Attn: Lynn Burnette
2810 W. Cary St.
Richmond, VA 23226

Spotsylvania Historical
Attn: Terry Dougherty
9019 Old Battlefield Blvd.
Spotsylvania, VA 22553

Jobfetch.com
3rd Floor
Oak Park, IL 60304
In Care Of: Cathy Cloud

Robert B. Van Arsdale, Esquire
Office of the United States Trustee
701 East Broad Street, Suite 4304
Richmond, Virginia 23219

Robert Orr
Sandton Capital
1340 Environ Way
Chapel Hill, NC 27517