**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| THE FREE LANCE-STAR PUBLISHING CO. | ) | |
| OF FREDERICKSBURG, VA[1] | ) | Case No. 14-30315-KRH |
| | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| WILLIAM DOUGLAS PROPERTIES, LLC[2] | ) | |
| | ) | |
| Debtor. | ) | Case No. 14-30316-KRH |
| | ) | (Joint Administration Pending) |

**OBJECTION TO NON-CONSENSUAL USE OF CASH
AND NON-CASH COLLATERAL**

DSP Acquisition, LLC ("**DSP**") hereby objects to the entry of the proposed order

(the "**Proposed Order**") granting the *Debtors' Motion to Authorize Use of Cash Collateral and*

*Adequate Protection and Memorandum in Support Thereof* [Docket No. 14] (the "**Motion**")

attached to the Motion as Exhibit B.[3]   In support of its objection (the "**Objection**"), DSP

respectfully states as follows:

---

[1]    Debtor The Free Lance-Star Publishing Co. of Fredericksburg, VA ("**FLS**")'s address and TIN are as follows: 616 Amelia Street, Fredericksburg, VA 22401; 54-0216580.

[2]    Debtor William Douglas Properties, LLC's address and TIN are as follows: 616 Amelia Street Fredericksburg, VA 22401; 20-4012609.

[3]    Capitalized terms used herein but not defined herein shall have the meaning ascribed to such terms in the Motion.

---

William A. Gray, Esquire (VSB No. 46911)
Elizabeth L Gunn, Esquire (VSB No. 71044)
SANDS ANDERSON PC
1111 East Main Street
P.O. Box 1998
Richmond, VA 23218-1998
Telephone: (804) 648-1636
*Counsel for DSP Acquisition, LLC*

S. Jason Teele, Esquire *(pro hac vice admission pending)*
Richard Bernstein, Esquire *(pro hac vice admission pending)*
LOWENSTEIN SANDLER LLP
65 Livingston Avenue
Roseland, NJ  07068
*Counsel for DSP Acquisition, LLC*

## PRELIMINARY STATEMENT

DSP is the secured lender to each of the above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**" and each a "**Debtor**") and is owed approximately $38 million as of the Petition Date (defined below).  The Debtors and DSP have engaged in extensive negotiations over the course of several months on a number of subjects including the terms of a potentially consensual order authorizing the use of the Collateral (defined below).  Unfortunately, the parties were unable to come to agreement before these cases were unexpectedly filed, but DSP is hopeful that these cases will provide an environment that will foster constructive negotiations going forward.

The Debtors' obligations to DSP are secured by liens on and security interests in substantially all of the Debtors' assets and, upon information and belief, DSP is undersecured.  The Debtors dispute that particular assets are encumbered or that DSP's liens and security interests are properly perfected.  DSP disagrees with this conclusion, and will address those issues at the appropriate time in these cases.

What cannot be disputed is that substantially all of the Debtors' assets are encumbered by valid, perfected first-in-priority pre-petition liens and security interests and those liens and security interests will continue by operation of section 552(b) of the Bankruptcy Code.  Thus, while DSP does not object to the Debtors' request to use Collateral *per se*, DSP objects to the use of its Collateral on the terms set forth in the Motion. The Debtors propose to adequately protect the value of DSP's Collateral as of the Petition Date by granting replacement liens on property that is already subject to DSP's liens and security interests and by making periodic cash payments to DSP from DSP's cash Collateral.  This protection is plainly insufficient because there is no value in these assets to "replace" the diminished value of the Collateral.

Nevertheless, DSP has been and continues to be willing to consent to the entry of the Proposed Order, on an <u>interim basis</u>, through the date of a final hearing, with the following modified adequate protection:

- Delete paragraph 8 of the Proposed Order and replace it with:

8.      Adequate Protection. DSP is entitled, pursuant to sections 361, 363(c)(2) and 363(e) of the Bankruptcy Code, effective as of the Petition Date, to adequate protection (the "**Adequate Protection**") of its interests in the Collateral in an amount equal to the aggregate diminution in the value of the Collateral from the Petition Date, including, without limitation, any such diminution resulting from the sale, lease or use by the Debtors (or other decline in value) of the Collateral and from the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (such diminution in value, the "**Adequate Protection Obligations**").  Any claim or lien granted by this Interim Order with respect to adequate protection shall not be: (a) subject or junior to any lien that is avoided and preserved for the benefit of the Debtors' estates, whether under section 551 of the Bankruptcy Code or otherwise; (b) subordinated to or made *pari passu* with any other claim or lien, whether under section 364(d) of the Bankruptcy Code or otherwise; or (c) subject to a surcharge pursuant to section 506(c) of the Bankruptcy Code. No claim or lien having a priority superior to or *pari passu* with those granted by this Interim Order with respect to the Adequate Protection shall be granted or allowed until the indefeasible payment in full in cash and satisfaction of the Adequate Protection Obligations and the Debtors' pre-petition obligations (the "**Pre-petition Debt**") to DSP.  As Adequate Protection, DSP is hereby granted the following:

(a)      Adequate Protection Liens.  DSP is hereby granted (effective and perfected upon the Petition Date and without the necessity of the execution by the Debtors of mortgages, deeds of trust, security agreements, pledge agreements, control agreements, financing statements or other agreements), to the extent of the diminution in value of the Collateral, additional and valid, perfected and enforceable continuing replacement security interests and liens (the "**Adequate Protection Liens**") in and upon all pre-petition and post-petition assets and properties of any kind whatsoever (tangible, intangible, real, personal and mixed) and wherever located, including but not limited to Collateral and causes of action to recover preferences, fraudulent transfers or any other avoidance claims under Chapter 5 of the Bankruptcy Code and the proceeds thereof (such Collateral, the "Replacement Collateral");

(b)      Adequate Protection Claim.  DSP is hereby granted, to the extent of the diminution in value of the Collateral, a superpriority claim over all administrative expense claims and unsecured claims against the Debtors, now existing or hereafter arising of any kind or nature whatsoever, as provided for in sections 503(b) and/or 507(b) of the Bankruptcy Code (the "**Adequate Protection Claim**").

(c)      Post-petition Fees and Expenses.  Whether or not such amounts are set forth on a line item in the Budget, DSP shall receive, as additional adequate protection, current cash payments from the Debtors of all fees and expenses payable to DSP under the Loan Documents, including but not limited to, the reasonable fees and expenses of counsel for DSP, in each case as provided for in the Loan Documents.  DSP shall submit summary invoices (from which privileged information may be redacted and subject in all respects to the work product doctrine) to the Debtors for reasonable professional fees and expenses, and the Debtors shall pay all amounts related thereto within ten (10) business days of receipt of each such invoice.

(d)      Interest Payments.  DSP shall receive, as additional adequate protection, payments in the amount that the Debtors would otherwise have been required to make to DSP for interest and fees under the Loan Documents without taking into account (for these limited additional adequate protection purposes only) the acceleration of the Debtors' obligations.

DSP does not consent and cannot consent to the use of its Collateral without adequate protection. Accordingly, in the absence of the modification included above, the Debtors' requested relief must be denied.

Finally, to the extent an order is entered granting the relief requested in the Motion on an interim basis, DSP respectfully requests that such order provide that the Debtors are authorized to use Collateral only through the date of the final hearing.  The Motion and Proposed Order are ambiguous as to the relief being requested.  Paragraph 26 of the Motion provides that the Debtors are seeking authority to use Collateral to fund the operation of their businesses through the budgetary period, which extends through the week ending April 25, 2014, and no other proposed interim period has been identified.

## BACKGROUND

1.      On January 23, 2014 (the "**Petition Date**"), the Debtors filed voluntary petitions for relief commencing these proceedings under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**").

2.      The Debtors continue to operate their businesses and manage their property as debtors-in-possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code.

3.      No trustee, examiner or official committee of unsecured creditors has been appointed in these chapter 11 cases.

4.      As of the Petition Date, the Debtors are indebted to DSP, as successor to Branch Banking & Trust Co. ("**BB&T**"), in the aggregate pre-petition amount of $38,028,407.12, including principal, interest, fees and costs pursuant to that certain Secured Credit Agreement dated as of September 11, 2007, as may have been subsequently amended, modified or restated from time-to-time (the "**Credit Agreement**").  The Debtors' obligations under the Credit Agreement are evidenced by that certain Draw Commercial Note dated as of September 11, 2007.  The Debtors' obligations under the Credit Agreement are secured by valid, first-in-priority properly perfected liens on, and security interests in, substantially all of the Debtors' property (the "**Collateral**") pursuant to, and as evidenced by, the following documents:

(a)     that certain Credit Line Deed of Trust executed by William Douglas for the benefit of BB&T dated as of September 11, 2007 and recorded on September 11, 2007 as instrument number 070003212 in the Clerk's Office of Fredericksburg City, Virginia;

(b)     that certain Additional Security Credit Line Deed of Trust executed by FLS for the benefit of BB&T dated as of September 11, 2007 and recorded on September 11, 2007 as instrument number 070003213 in the Clerk's Office of Fredericksburg City, Virginia; (the foregoing deeds of trust, as amended, restated, modified or supplemented from time to time, being collectively referred to herein each as a "Deed of Trust" and collectively as the "**Deeds of Trust**");

(c)     that certain Assignment of Rents and Leases executed by William Douglas for the benefit of BB&T dated as of September 11, 2007 and recorded on September 11, 2007 as instrument number 070003214 in the Clerk's Office of Fredericksburg City, Virginia;

(d)     that certain Assignment of Rents and Leases executed by FLS for the benefit of BB&T dated as of September 10, 2007 and recorded on September 11, 2007 as instrument number 070003215 in the Clerk's Office of Fredericksburg City, Virginia (the foregoing assignments of rents and leases, as amended, restated, modified or supplemented from time to time, being collectively referred to herein each as an "**Assignment of Rents**" and collectively as the "**Assignments of Rents**");

(e)     that certain Security Agreement between FLS and BB&T dated as of September 11, 2007 (as amended, restated, modified or supplemented from time to time, the "**Security Agreement**"); and

(f)     all of the other Collateral Documents, as defined in the Credit Agreement (the Credit Agreement, Security Agreement, Deeds of Trust, Assignments of Rents, the Collateral Documents and all of the documents listed and referenced in (a)-(f) collectively, the "**Loan Documents**").

5.     On January 17, 2014, DSP delivered a notice of default to the Debtors indicating that the Debtors have been in continuous default since June 30, 2013 when the final forbearance period expired.

## OBJECTION

6.     DSP objects to the relief requested in the Motion because its interests in the Collateral are not adequately protected.  The adequate protection proposed by the Debtors is illusory.

7.     Section 363(c)(2) of the Bankruptcy Code states that a debtor "may not use, sell, or lease cash collateral . . . unless - (A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use" in accordance with the Bankruptcy Code.  11 U.S.C. § 363(c)(2).

8.     Section 363(e) of the Bankruptcy Code provides that "[n]otwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used . . .or proposed to be used. . .by the [debtor], the court, with or without a hearing, shall prohibit or condition such use. . .as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e).

9.     If the secured lender does not consent, then the court must prohibit the debtor's use of collateral to the extent necessary to adequately protect the lender's interests. 11 U.S.C. § 363(e).

10.     The rationale behind the adequate protection requirement is to provide a secured creditor with the benefit of its bargain by protecting the secured creditor from diminution in the value of its collateral during the reorganization process.  *See, e.g., SunTrust Bank vs. Den-*

*Mark Construction, Inc. (In re Den-Mark Construction, Inc.),* 406 B.R. 683, 693-94 (E.D.N.C. 2009); *The Resolution Trust Corp. v. Swedeland Dev. Group, Inc. (In re Swedeland Dev. Group, Inc.),* 16 F.3d 552, 564 (3d Cir. 1994) ("[T]he whole purpose of adequate protection for a creditor is to insure that the creditor receives the value for which he bargained prebankruptcy.") (citations omitted); *see also In re Mosello*, 195 B.R. 277, 288 (Bankr. S.D.N.Y. 1996) ("The goal of adequate protection is to safeguard the secured creditor from diminution in the value of its interest during the Chapter 11 reorganization." (quoting *In re 495 Central Park Avenue Corp.*, 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992))).

11.    The Bankruptcy Code does not define "adequate protection," but section 361 provides three examples - a cash payment or periodic cash payments, additional or replacement liens, and the "indubitable equivalent" of a secured creditor's interest in its collateral.  11 U.S.C. § 361.  While the determination of adequate protection is a fact-specific inquiry, *see Mosello*, 195 B.R. at 289, "[t]he test is whether the secured party's interest is protected from diminution or decrease as a result of the proposed use of . . . collateral. . . . [I]f the debtor's proposed protections do not adequately preserve the creditor's interest in the . . . collateral as it existed on the petition filing date, then the creditor is not adequately protected." *In re Carbone Cos.*, Inc., 395 B.R. 631, 635 (Bankr. N.D. Ohio 2008) (citations omitted).

12.    "[T]he standard of adequate protection to be afforded a creditor when its . . . collateral is being used should be a high one[,]" *In re Berens*, 41 B.R. 524, 528 (Bankr. D. Minn. 1984), and the burden of proving that a secured creditor is adequately protected is on the debtor.  11 U.S.C. § 363(p).

13.    The Debtors assert that they satisfy this burden by offering two types of purported protection (a) replacement liens of the same extent, validity, priority and enforceability as DSP's pre-petition liens and (b) monthly payments of $70,000 per month.  This assertion does not pass muster.

14.    DSP's pre-petition liens and security interests encumber substantially all of the Debtors' property and will extend to after-acquired property, including receivables and

rents, under the terms of the Loan Documents and section 552(b) of the Bankruptcy Code. The proposed replacement liens, therefore, provide DSP with no incremental security for any diminution in the value of its Collateral. Courts routinely hold that replacement liens on post-petition rents are illusory by virtue of section 552(b) of the Bankruptcy Code. *See In re Buttermilk Towne Center, LLC*, 442 B.R. 558 (6th Cir. B.A.P. 2010); *In re Smithville Crossing, LLC,* Case No. 11-2573, 2011 WL 5909527 at *10 (Bankr. E.D.N.C. September 28, 2011) (collecting cases). In *Smithville,* for example, the Bankruptcy Court held that the debtor could not give the secured lender post-petition liens on rents as adequate protection because the lender already had a lien on post-petition rents pursuant to section 552 of the Bankruptcy Code. *Id.* at *11. Replacement liens on post-petition proceeds and profits are no different.

15.    Replacement liens on already encumbered property are essentially an offer of adequate protection by equity cushion. However, DSP is undersecured, and the Debtors have no equity in the Collateral. "Case law has almost uniformly held that an equity cushion of 20% or more constitutes adequate protection . . . [and] has almost as uniformly held that that an equity cushion of 11% is insufficient to constitute adequate protection." *In re James River Assocs.,* 148 B.R. 790, 796 (E.D. Va. 1992). Given that there is no equity in the Collateral, the Debtors' purported "replacement liens" do not provide any, let alone adequate, protection.

16.    Any suggestion that there is equity in the Collateral can only be based on the Debtors' hope for a post-petition turnaround and would be entirely speculative. Notwithstanding the forbearances and other modifications, the Debtors have been in default under the Credit Agreement since 2010 and have been unable to turnaround their businesses since then, despite numerous extensions and waivers. Courts have refused to allow debtors to use a secured creditor's cash collateral where the debtors' basis for providing substitute or replacement security was uncertain and speculative. *See, e.g., In re Windsor Hotel, L.L.C.*, 295 B.R. 307, 314 (Bankr. C.D. Ill. 2003) ("Congress did not contemplate that a secured creditor could find its position eroded and, as compensation for the erosion, be offered an opportunity to recoup dependent upon the success of a business with inherently risky prospects.") (quoting *In re*

*Swedeland.,* 16 F.3d at 567); *In re Feather River Orchards*, 56 B.R. 972, 976 (Bankr. E.D. Cal. 1986) (refusing to permit non-consensual use of cash collateral because replacement lien in subsequent year's crops was not the indubitable equivalent of lien on proceeds of crops already harvested and noting that secured creditor, after years of losses by debtor, declined to voluntarily loan further sums and vigorously opposed "involuntary loan of its cash collateral").

17.     Furthermore, the replacement liens are proposed to be *pari passu* with DSP's pre-petition liens and thus would be subject to priming and subordination while not providing DSP with incremental security for the diminished value of its Collateral.  In fact, given the declining value of the Collateral, these liens and claims, on their own, would actually give DSP *less* than what it bargained for pre-bankruptcy.

18.     The Debtors' proposed monthly payments likewise provide no additional protection to DSP.  Any receivables generated by the Debtors post-petition are proceeds of DSP's Collateral and thus already subject to DSP's pre-petition liens.  Thus, again, the proposed adequate protection provides no incremental protection to DSP and is illusory.

19.     The Debtors argue that DSP's liens and security interests do not attach to certain transmission towers referred to in the Motion as the Tower Assets.  The Debtors' assertion is incorrect and irrelevant to the relief requested.  As an initial matter, the transmission towers constitute the Debtors' equipment used in the ordinary course of business and are subject to DSP's valid and perfected security interests.  In addition, any receivables generated by the businesses are subject to DSP's valid and perfected security interests.  However, whether or not DSP's liens and security interests in the transmission towers were perfected pre-petition bears on the underlying value of DSP's claim, but does not bear on whether replacement liens should extend over those assets, particularly where there are no other unencumbered assets and no other source of protection in the event of diminution.

20.     Where, as here, a debtor's future as an operating entity is uncertain and speculative, the secured lender's risk of loss is considerable.  The Debtors have commenced these cases in a litigation posture and without the cooperation of their secured lender, despite

months of negotiations.  The Debtors have refused to provide the minimal levels of adequate

protection to which a secured lender is routinely entitled, instead opting for a free-fall chapter 11,

and injecting unnecessary chaos into this already chaotic process, to the detriment of all parties-

in-interest.

          21.    To satisfy their burden, the Debtors must adequately protect DSP from the

risk that the Debtors will not be able to perform their promises, as they have not done since 2010.

In the absence of such assurances, the Debtors must be prohibited from using DSP's Collateral.

## EMERGENCY CROSS MOTION TO PROHIBIT USE OF CASH COLLATERAL

          22.    The Debtors are obligated to DSP in the amount of approximately $38

million, which obligations are secured by valid, perfected first-in-priority liens on and security

interests in substantially all of the Debtors' assets.  The Debtors cannot meet their burden to

demonstrate the existence of protection adequate to compensate DSP for the diminution in the

value of its Collateral from the Petition Date, and accordingly, in the absence of DSP's consent

to the use of DSP's Collateral, the Debtors must be prohibited from using their cash collateral

under section 363 of the Bankruptcy Code.

          **WHEREFORE**, DSP respectfully requests that in the absence of the

modifications requested in this Objection, the Court deny the relief requested in the Motion and

grant DSP's Emergency Cross Motion, and grant such other and further relief as the Court may

deem proper.

Dated:  January 24, 2014        Respectfully submitted,

                /s/ *William A. Gray*
                William A. Gray, Esquire (VSB No. 46911)
                Elizabeth L. Gunn, Esquire (VSB No. 71044)
                SANDS ANDERSON PC
                1111 East Main Street (23219)
                P.O. Box 1998
                Richmond, VA 23218-1998
                Telephone:  (804) 648-1636
                Facsimile:  (804) 783-7291

And

S. Jason Teele, Esquire *(pro hac vice admission pending)*
Richard Bernstein, Esquire *(pro hac vice admission pending)*
LOWENSTEIN SANDLER LLP
65 Livingston Avenue
Roseland, NJ  07068
*Counsel to DSP Acquisition, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of January, 2014, a true and accurate copy of the
foregoing was electronically filed with the Clerk of the Court for the Eastern District of Virginia,
using the CM/ECF system, which thereby caused the above to be served electronically on all
registered users of the ECF system that have filed notices of appearance in this matter, and sent
via email to the following:


Robert Van Arsdale
*Assistant United States Trustee*

Paula S. Beran, Esquire
Lynn Tavenner, Esquire
Tavenner & Beran, PLC
*Counsel to The Free Lance-Star
Publishing Co. of Fredericksburg,
VA and William Douglas Properties,
LLC*


/s/ *William A. Gray*
SANDS ANDERSON PC
William A. Gray (VSB No. 46911)
Elizabeth L. Gunn (VSB No. 71044)
1111 East Main Street, Suite 2400
P.O. Box 1998
Richmond, VA  23218-1998
(804) 648-1636 (Telephone)
(804) 783-7291 (Facsimile)